FILED
IN OPEN COURT

JAN 17 2017

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2:17cr2 |
| ) | |
| DEVON JAY CALDWELL, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

By signing below, the parties stipulate that the allegations in the pending criminal information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. Beginning in or about September 2015, and continuing until on or about August 30, 2016, within the Eastern District of Virginia, and elsewhere, the defendant DEVON JAY CALDWELL, did combine, conspire, confederate, and agree with other persons, to knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means, a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, and any combination of such means would be used to cause the person to engage in commercial sex acts, in violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(1).

### Jane Doe 1

2. In the spring of 2016, CALDWELL met Jane Doe 1, a 21-year-old female, at a hotel at the Virginia Beach Oceanfront. The two were introduced by D.W., Jane Doe 1's then-boyfriend and CALDWELL's cousin. Both D.W. and CALDWELL encouraged Jane Doe 1 to

begin engaging in commercial sex acts and facilitated her prostitution by posting advertisements for her services on Backpage.com.

3. For a time, Jane Doe 1 performed commercial sex acts at D.W.'s direction at hotels in Virginia Beach and elsewhere. She provided all the money she earned from her appointments to D.W. D.W. was often physically violent with her, including throwing her into walls and punching her. During the time she worked for D.W., Jane Doe 1 frequently saw CALDWELL at the same hotels where she was performing commercial sex acts for D.W., along with several women who engaged in commercial sex out of CALDWELL's hotel rooms.

4. In May 2016, Jane Doe 1 and D.W. had a verbal and physical altercation, after which D.W. told her she would begin working for CALDWELL. CALDWELL took Jane Doe 1 to a hotel in Virginia Beach, introduced her to several other women prostituting for him, and began facilitating her commercial sex acts by posting her on Backpage.com. After posting advertisements for Jane Doe 1, CALDWELL communicated by cellular telephone with commercial sex customers (whom CALDWELL called "plucks") to arrange appointments, provided Jane Doe 1 with condoms for her use with "plucks," and made arrangements to rent rooms in hotels for the group's use. CALDWELL also arranged transportation for Jane Doe 1 to take "out-call" appointments – commercial sex acts at a location other than the hotel where the group was staying. Jane Doe 1 took appointments at hotels and other locations in Virginia Beach, Norfolk, Chesapeake, Newport News, and elsewhere in the Eastern District of Virginia.

5. CALDWELL required Jane Doe 1 to call him "Dad," and to take a minimum of five "plucks" per night, ranging from 15 minute "quick visits" to one-to-two hour appointments. CALDWELL set the prices for her appointments, which ranged from $50 for a "quick visit" to $200-$300 for an hour-long appointment. At the end of each appointment, CALDWELL would

collect all the money Jane Doe 1 had earned. CALDWELL did provide her with food, a hotel room to sleep in, clothes as needed, and also regularly supplied her with drugs. Indeed, CALDWELL made money by selling drugs in addition to the money he made from his commercial sex business.

6. During the time Jane Doe 1 worked for CALDWELL, he encouraged her and several other women working for him to use other illicit drugs – including cocaine, methamphetamine, heroin (which he called "dog food"). CALDWELL provided Jane Doe 1 and the other women drugs prior to their commercial sex appointments, as well as at the conclusion of the appointments as a reward. Jane Doe 1 gradually began using larger quantities of drugs to help her mentally cope with the situation, and ultimately became a daily drug user.

7. If Jane Doe 1 did not meet her quota of "plucks," or if CALDWELL withhold drugs from her, and would require her to stay awake until she completed her appointments, and would direct his co-conspirators to do the same.

8. Jane Doe 1 worked for CALDWELL for approximately three months. During that time, she became familiar with several of the other women who also worked for CALDWELL as prostitutes, including Jane Doe 2.

### Jane Doe 2

9. In September 2015, then-18-year-old Jane Doe 2 was introduced to CALDWELL through a mutual acquaintance. Jane Doe 2 was a heroin addict, having used the drug without cessation since age 13, and CALDWELL began supplying her with heroin on a daily basis. In exchange, Jane Doe 2 began performing commercial sex acts at CALDWELL's direction in order to earn money to cover the heroin she was being provided.



10. As with Jane Doe 1, CALDWELL posted Jane Doe 2 on Backpage.com, arranged her "plucks," coordinated her transportation to "out-call" appointments, rented hotel and motel rooms for the meetings to take place, set the prices for her services, gave her condoms for her use, and provided security. CALDWELL collected the money earned by Jane Doe 2 during her "plucks," often netting $600 to $1,000 per night.

11. CALDWELL would provide Jane Doe 2 with heroin prior to her "plucks," as well as afterwards. If Jane Doe 2 told CALDWELL she did not want to take a "pluck," CALDWELL would withhold heroin from her, resulting in Jane Doe 2's significant physical discomfort and painful withdrawal symptoms.

12. Jane Doe 2 worked with CALDWELL from September to November 2015, and then again from April to August 2016.

### The Conspiracy

13. CALDWELL did not operate alone in facilitating the commercial sex acts of these women. Indeed, several individuals – including A.B., J.C., and 16-year-old L.J. – assisted CALDWELL by posting women on Backpage.com, setting up "plucks," making sure the women had food, renting hotel rooms for the group's use using prostitution proceeds, collecting money from the women's appointments, and driving women to "out-call" appointments. One co-conspirator drove women to approximately 100 to 150 "out-calls" during three months of working with CALDWELL.

14. Additionally, CALDWELL's co-conspirators provided marijuana, cocaine, methamphetamine, and heroin (supplied to them by CALDWELL) to the women. The co-conspirators understood that these drugs were to be used both to help the women stay awake in order that they could take appointments late at night or early in the morning, as well as to reward



them after they were done working. CALDWELL instructed his co-conspirators to withhold drugs from the women who did not want to work, as well as from the women who did not meet their quotas. The co-conspirators also threatened to kick the women out of the hotel rooms where they were staying if they did not fulfill their quota of "plucks."

15.    In connection with their commercial sex business, CALDWELL and his co-conspirators possessed three guns. The co-conspirators would secrete the firearms in the hotel and motel rooms where commercial sex acts were performed, and CALDWELL would regularly carry a gun on his person during the "plucks," stationing himself in an adjoining room for security purposes.

16.    The hotel rooms rented by the co-conspirators accepted guests who traveled in interstate commerce and the use of these hotels involved and affected interstate commerce. Further, the condoms CALDWELL and his co-conspirators provided Jane Does 1 and 2 with for use during their commercial sex acts, which condoms were manufactured in states other than the Commonwealth of Virginia and which were in and affected interstate commerce.



17. The acts taken by the defendant, DEVON JAY CALDWELL, in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law and were not committed by mistake, accident, or other innocent reason. The defendant acknowledges that the foregoing Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the government. It does not describe all of the defendant's conduct relating to the offense charged in this case, does not identify all of the persons with whom the defendant may have engaged in illegal activities, and is not intended to be a full enumeration of all the facts surrounding the defendant's case.

DANA J. BOENTE
UNITED STATES ATTORNEY

By: *V. Kathleen Dougherty* (signature)
V. Kathleen Dougherty
Assistant United States Attorney
Virginia State Bar No. 77294
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - (757) 441-6331
Facsimile Number - (757) 441-6689
v.kathleen.dougherty@usdoj.gov

*United States v. Devon Jay Caldwell*, 2:17cr2

<u>Defendant's Signature:</u>  After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

*[signature]*
DEVON JAY CALDWELL
Defendant

<u>Defense Counsel's Signature:</u>  I am the attorney for defendant DEVON JAY CALDWELL. I have carefully reviewed the above Statement of Facts with him. To the best of my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

*[signature]*
Amanda Conner
Counsel for Defendant

7