# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

**UNITED STATES OF AMERICA**

v.                                                                                                        Criminal Case No. 2:17cr002
                                                                                                       Civil Action No. 2:18cv198

**DEVON JAY CALDWELL,**

        Petitioner.

## MEMORANDUM OPINION

Devon Jay Caldwell ("Caldwell" or "Petitioner"), a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on April 12, 2018 ("§ 2255 Motion," ECF No. 33).[1] Caldwell contends that the Court made two errors at his sentencing, and that he received the ineffective assistance of counsel prior to and at sentencing. Specifically, Caldwell argues:

    Claim One:     The Court erred in assigning the increased base offense level of 34 instead of 14 for the offense of conviction and [this error] requires resentencing. (§ 2255 Mot. 4.)

    Claim Two:     The Court erred in sentencing the petitioner for "grouped offenses" and applying 2 levels, when the petitioner pled guilty only to a single count. (*Id*. at 5.)

    Claim Three:     The [Petitioner's] counselor (A.C. Conner) was ineffective during critical stages and her actions caused the increased sentencing and prejudice to Petitioner. (*Id*. at 6.) Counselor was ineffective "by failing to research . . . and failing to raise any objections to the additional levels being used to increase my base offense level." (*Id*. at 13.)

Caldwell also filed a Motion to Supplement pending 2255 Filing (ECF No. 40) on August 2,

---

[1] The Court employs the pagination assigned to Caldwell's § 2255 Motion by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in the quotations from Caldwell's submissions.

2018. The Government responded to Caldwell's § 2255 Motion and his Motion to Supplement on September 17, 2018. (Response, ECF No. 41.) The Government contends that Caldwell has procedurally defaulted Claims One and Two, that Claims One and Two are without merit, and that Claim Three must be denied because Petitioner cannot satisfy either component of the *Strickland* test for ineffective assistance of counsel. On October 5, 2018, Caldwell filed a reply to the Government's Response. (Reply, ECF No. 42.) On November 12, 2020, this case was reassigned to the undersigned. The matter is ripe for disposition, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). Accordingly, Caldwell's Motion to Set a Hearing Date on Motion for Habeas Corpus (ECF No. 43) will be denied. For the reasons set forth below, Caldwell's claims will be dismissed.

## I. PROCEDURAL HISTORY

On November 17, 2016, Caldwell was named in a two-count Criminal Complaint charging him in Count One with sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1), and in Count Two with conspiracy to commit sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1594(c). (ECF No. 1.) At his initial appearance on November 18, 2016, Caldwell requested that counsel be appointed, and Amanda C. Conner, Assistant Federal Public Defender, was appointed to represent him. (ECF No. 5.) Ms. Conner represented him throughout these proceedings, until June 2018. (ECF Nos. 35, 36.)

The parties negotiated a plea agreement, and on January 6, 2017, Caldwell was named in a one-count Criminal Information charging him with conspiracy to commit sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1594(c), 1591(a)(1) and (b)(1). (ECF No.

13.) On January 17, 2017, Caldwell pled guilty to the one-count Criminal Information with a written Plea Agreement and written Statement of Facts. (Plea Agreement ¶ 1, ECF No. 17; Statement of Facts, ECF No. 18.) According to the Plea Agreement and Statement of Facts, Caldwell pled guilty to conspiracy to commit sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1594(c), 1591(a)(1) and (b)(1), with a maximum penalty of "Life imprisonment." (Plea Agreement ¶ 1; SOF ¶ 1.) In the Plea Agreement, Caldwell waived his right to appeal and agreed that he was "satisfied that the defendant's attorney has rendered effective assistance." (*Id*. ¶¶ 3, 5.)

According to the Presentence Investigation Report (PSR ¶¶ 16–40, ECF No. 32), the advisory Guidelines range was calculated as follows:

Because Caldwell pled guilty to conspiracy to commit sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1594(c), 1591(a)(1) and (b)(1), the initial Base Offense Level, pursuant to USSG § 2G1.1(a)(1), was 34. Because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b) or 18 U.S.C. § 2242, USSG § 2G1.1(c)(1) required a cross reference to the application of USSG § 2A3.1, resulting in a Base Offense Level of 30 pursuant to USSG § 2A3.1(a). The cross reference also required application of USSG § 2A3.1(b), Specific Offense Characteristics, which results the addition of 4 levels because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b). Because of the required cross reference, the initial Base Offense Level does not apply. Instead, the calculations pursuant to the cross reference applied. To that Level 34 (the Base Offense Level of 30 from the cross reference plus the additional 4 levels based on the Specific Offense Characteristics), 2 levels were added as an Adjustment for Role in the Offense, pursuant to USSG § 3B1.1(c), resulting in an Adjusted Offense Level of 36 for Count One as to the first victim, Jane Doe 1. The same calculations and

Guidelines applied to the second victim, Jane Doe 2, resulting in another Adjusted Offense Level of 36. Next, USSG § 2G1.1(d) required that the Multiple Count Adjustment be applied. It states: "If the offense involved more than one victim, Chapter Three, Part D (Multiple Counts) shall be applied as if the promoting of a commercial sex act or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction." USSG § 2G1.1(d)(1). The application of the Multiple Count Adjustment resulted in a Combined Adjusted Offense Level of 38. Caldwell was given a reduction of 3 levels based on his Acceptance of Responsibility, resulting in a Total Offense Level of 35. (PSR ¶¶ 16–40.)

Caldwell's criminal history category was correctly calculated in the PSR as IV. (*Id*. ¶¶ 41–52.) But his counsel argued for a downward variance to a criminal history category of III based on what she described as an "over-representation of the seriousness of his criminal history." (Def's Sent. Pos. 2, ECF No. 26.) His counsel also requested a downward variance to 120 months based on the sentencing factors. (*Id*. at 7–10.) At the sentencing hearing on April 24, 2017, the Court granted the requested downward variance on the basis of the over-representation of the Petitioner's criminal history, treating it as an objection that was granted, and the Statement of Reasons reflects a criminal history category of III and a resulting advisory Guidelines range of 210 to 262 months. (SOR 1, 4, ECF No. 31.) The Court sentenced Caldwell within that lower advisory Guidelines range to 216 months of imprisonment and ten years of supervised release. (J. 2–3, ECF No. 30.) There was no appeal.

## II. FACTUAL BASIS FOR PLEA

Caldwell stipulated that the allegations in the pending criminal information and the following facts were true and correct and that, had the matter gone to trial, the United States would have proven them beyond a reasonable doubt:

4

1. Beginning in or about September 2015, and continuing until on or about August 30, 2016, within the Eastern District of Virginia, and elsewhere, the defendant DEVON JAY CALDWELL, did combine, conspire, confederate, and agree with other persons, to knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means, a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, and any combination of such means would be used to cause the person to engage in commercial sex acts, in violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(1).

Jane Doe 1

2. In the spring of 2016, CALDWELL met Jane Doe 1, a 21-year-old female, at a hotel at the Virginia Beach Oceanfront. The two were introduced by D.W., Jane Doe 1's then boyfriend and CALDWELL'S cousin. Both D.W. and CALDWELL encouraged Jane Doe 1 to begin engaging in commercial sex acts and facilitated her prostitution by posting advertisements for her services on Backpage.com.

3. For a time, Jane Doe 1 performed commercial sex acts at D.W.'s direction at hotels in Virginia Beach and elsewhere. She provided all the money she earned from her appointments to D.W. D.W. was often physically violent with her, including throwing her into walls and punching her. During the time she worked for D.W., Jane Doe 1 frequently saw CALDWELL at the same hotels where she was performing commercial sex acts for D.W., along with several women who engaged in commercial sex out of CALDWELL's hotel rooms.

4. In May 2016, Jane Doe 1 and D.W. had a verbal and physical altercation, after which D.W. told her she would begin working for CALDWELL. CALDWELL took Jane Doe 1 to a hotel in Virginia Beach, introduced her to several other women prostituting for him, and began facilitating her commercial sex acts by posting her on Backpage.com. After posting advertisements for Jane Doe 1, CALDWELL communicated by cellular telephone with commercial sex customers (whom CALDWELL called "plucks") to arrange appointments, provided Jane Doe 1 with condoms for her use with "plucks," and made arrangements to rent rooms in hotels for the group's use. CALDWELL also arranged transportation for Jane Doe 1 to take "out-call" appointments - commercial sex acts at a location other than the hotel where the group was staying. Jane Doe 1 took appointments at hotels and other locations in Virginia Beach, Norfolk, Chesapeake, Newport News, and elsewhere in the Eastern District of Virginia.

5. CALDWELL required Jane Doe 1 to call him "Dad," and to take a minimum of five "plucks" per night, ranging from 15 minute "quick visits" to one-to-two hour appointments. CALDWELL set the prices for her appointments, which ranged from $50 for a "quick visit" to $200-$300 for an hour-long appointment. At the end of each appointment, CALDWELL would collect all the money Jane Doe 1 had earned. CALDWELL did provide her with food, a hotel room to sleep in, clothes as needed, and also regularly supplied her with drugs. Indeed, CALDWELL made money by selling drugs in addition to the money he made from his commercial sex business.

6. During the time Jane Doe 1 worked for CALDWELL, he encouraged her and several other women working for him to use other illicit drugs - including cocaine,

5

methamphetamine, heroin (which he called "dog food"). CALDWELL provided Jane Doe 1 and the other women drugs prior to their commercial sex appointments, as well as at the conclusion of the appointments as a reward. Jane Doe 1 gradually began using larger quantities of drugs to help her mentally cope with the situation, and ultimately became a daily drug user.

7. If Jane Doe 1 did not meet her quota of "plucks," or if CALDWELL withhold drugs from her, and would require her to stay awake until she completed her appointments, and would direct his co-conspirators to do the same.

8. Jane Doe 1 worked for CALDWELL for approximately three months. During that time, she became familiar with several of the other women who also worked for CALDWELL as prostitutes, including Jane Doe 2.

### Jane Doe 2

9. In September 2015, then-18-year-old Jane Doe 2 was introduced to CALDWELL through a mutual acquaintance. Jane Doe 2 was a heroin addict, having used the drug without cessation since age 13, and CALDWELL began supplying her with heroin on a daily basis. In exchange, Jane Doe 2 began performing commercial sex acts at CALDWELL's direction in order to earn money to cover the heroin she was being provided.

10. As with Jane Doe 1, CALDWELL posted Jane Doe 2 on Backpage.com, arranged her "plucks," coordinated her transportation to "out-call" appointments, rented hotel and motel rooms for the meetings to take place, set the prices for her services, gave her condoms for her use, and provided security. CALDWELL collected the money earned by Jane Doe 2 during her "plucks," often netting $600 to $1,000 per night.

11. CALDWELL would provide Jane Doe 2 with heroin prior to her "plucks," as well as afterwards. If Jane Doe 2 told CALDWELL she did not want to take a "pluck," CALDWELL would withhold heroin from her, resulting in Jane Doe 2's significant physical discomfort and painful withdrawal symptoms.

12. Jane Doe 2 worked with CALDWELL from September to November 2015, and then again from April to August 2016.

### The Conspiracy

13. CALDWELL did not operate alone in facilitating the commercial sex acts of these women. Indeed, several individuals - including A.B., J.C., and 16-year-old L.J. – assisted CALDWELL by posting women on Backpage.com, setting up "plucks," making sure the women had food, renting hotel rooms for the group's use using prostitution proceeds, collecting money from the women's appointments, and driving women to "out-call" appointments. One coconspirator drove women to approximately 100 to 150 "out-calls" during three months of working with CALDWELL.

14. Additionally, CALDWELL's co-conspirators provided marijuana, cocaine, methamphetamine, and heroin (supplied to them by CALDWELL) to the women. The coconspirators understood that these drugs were to be used both to help the women stay awake in order that they could take appointments late at night or early in the morning, as well as to reward them after they were done working. CALDWELL instructed his co-conspirators to withhold drugs from the women who did not want to work, as well as from the women who did not meet their quotas.

> The co-conspirators also threatened to kick the women out of the hotel rooms where they were staying if they did not fulfill their quota of "plucks."
> 15. In connection with their commercial sex business, CALDWELL and his coconspirators possessed three guns. The co-conspirators would secrete the firearms in the hotel and motel rooms where commercial sex acts were performed, and CALDWELL would regularly carry a gun on his person during the "plucks," stationing himself in an adjoining room for security purposes.
> 16. The hotel rooms rented by the co-conspirators accepted guests who traveled in interstate commerce and the use of these hotels involved and affected interstate commerce. Further, the condoms CALDWELL and his co-conspirators provided Jane Does 1 and 2 with for use during their commercial sex acts, which condoms were manufactured in states other than the Commonwealth of Virginia and which were in and affected interstate commerce.
> 17. The acts taken by the defendant, DEVON JAY CALDWELL, in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law and were not committed by mistake, accident, or other innocent reason. The defendant acknowledges that the foregoing Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the government. It does not describe all of the defendant's conduct relating to the offense charged in this case, does not identify all of the persons with whom the defendant may have engaged in illegal activities, and is not intended to be a full enumeration of all the facts surrounding the defendant's case.

(Statement of Facts, ECF No. 18.)

The PSR also notes, based on grand jury testimony, that Caldwell "had 8 to 10 females working for him." (PSR ¶ 7.) Jane Doe 1 testified about "the volatile relationship of [Caldwell] and Jane Doe 3 [which] had an effect on Jane Doe 1, who witnessed it." (*Id*. ¶ 8.) Jane Doe 1 also "indicated that she did what [Caldwell] told her to do, because she feared him." (*Id*.) Jane Doe 1 also stated that "on one occasion, [Caldwell] threatened to kill her family when she threatened to go to the police to turn him in." (*Id*. at 9.)

### III. ANALYSIS

#### A. Claims One and Two

The Government argues that Caldwell has procedurally defaulted Claims One and Two because Caldwell failed to file a direct appeal and he fails to demonstrate cause and prejudice to

excuse his default. The Court agrees that the procedural default rule bars Claims One and Two from review here, absent a showing of cause and prejudice or actual innocence, because Caldwell could have raised, but did not raise, these claims on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *see also United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009) (explaining that a petitioner who waives the right to appeal "is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that could have been raised on appeal."). Caldwell contends that the ineffectiveness of counsel rendered him constitutes cause to excuse his default of Claims One and Two, and that he has demonstrated cause and prejudice. (§ 2255 Mot. 20.) This contention lacks merit for the reasons discussed below. Accordingly, Caldwell's Claims One and Two will be dismissed.

### B. Claim Three

In Claim Three, Caldwell alleges that he received ineffective assistance of counsel prior to and at sentencing. (§ 2255 Mot. 6, 13, 16.) Specifically, Caldwell claims that counsel failed to "raise the 2 objections [] and caused the increased guideline findings." (*Id*. at 21.) Caldwell claims that counsel was ineffective for her failure to object to (1) the Base Offense Level of 34 rather than 14 and (2) the application of the Multiple Count Adjustment. (*Id*. at 13–16.)

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show

8

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id*. at 697. Caldwell cannot demonstrate either deficient performance or prejudice as to the two alleged failures on the part of his counsel.

With regard to his claim that counsel was ineffective for her failure to object to the Base Offense Level of 34 rather than 14 and her failure to object to the Multiple Count Adjustment, Caldwell is incorrect. As noted previously herein, because Caldwell pled guilty to conspiracy to commit sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1594(c), 1591(a)(1) and (b)(1), the initial Base Offense Level, pursuant to USSG § 2G1.1(a)(1), is 34.[2] First, a violation of § 1594(c) is by definition a violation of § 1591. Section 1594(c) states: "Whoever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both." Moreover, in this case, Caldwell pled guilty to § 1594(c) specifically incorporating § 1591(a)(1) and the penalty provision under § 1591(b)(1). The one-count Criminal Information charged him with conspiracy to commit sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1594(c), 1591(a)(1) and (b)(1). (ECF No. 13.) The written Plea Agreement also specified that Caldwell was pleading

---

[2] Some courts have applied USSG § 2X1.1(a), which states that the "base offense level from the guideline for the substantive offense" is the Base Offense Level for a conspiracy not covered by a specific offense guideline, to get to USSG §§ 2G1.1, 2G.13, and 2G2.2 as the applicable Guidelines. *United States v. Valdez*, 2021 WL 3478402, at *5 (11th Cir. 2021); *United States v. Carter*, 960 F.3d 1007, 1013-14 (8th 2020). But other courts have found that, because § 1594(c) is by definition a conspiracy to violate § 1591, courts may rely on Appendix A of the Sentencing Guidelines which lists 18 U.S.C. § 1591 with USSG §§ 2G1.1, 2G.13, and 2G2.2 as the applicable Guidelines.

guilty to "Conspiracy to Engage in Sex Trafficking by Force, Fraud, and Coercion, in violation of Title 18, United States Code, Sections 1594(c), 1591(a)(1), and 1591(b)(1)." (Plea Agreement ¶ 1.) If Caldwell had been convicted only under § 1591(a)(1) but not under (b)(1), the initial Base Offense Level would have been 14. But that was not the case here. Moreover, because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b) or 18 U.S.C. § 2242, USSG § 2G1.1(c)(1) required the cross reference to the application of USSG § 2A3.1, resulting in a Base Offense Level of 30 pursuant to USSG § 2A3.1(a). The cross reference also requires application of USSG § 2A3.1(b), Specific Offense Characteristics, which results the addition of 4 levels because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b). Because of the required cross reference, the initial Base Offense Level of 34 does not apply. *See United States v. Patterson*, 755 F. App'x 238, 240 (4th Cir. 2018) (confirming that the "cross-reference applies if the offense conduct involved 'using force against the victim [or] threatening or placing the victim in fear that any person will be subject to death, serious bodily injury, or kidnapping.'") Instead, the calculation of 30 plus the addition of 4 levels applies, pursuant to the cross reference. So, Caldwell's argument that the Court should have applied a Base Offense Level 14 is wrong. Even if the Court had applied a Base Offense Level 14 at that point in the initial calculations under § 2G1.1(a), the cross reference under 2G1.1(c)(1) was required because the offense of conviction involved conduct described in 18 U.S.C. § 2241(a) or (b) or 18 U.S.C. § 2242; thus, at that point the calculations pursuant to the cross reference apply: a Base Offense Level of 30 from the cross reference plus the additional 4 levels based on the Specific Offense Characteristics. *See* USSG §§ 2A3.1(a)(2) & (b)(1).

Caldwell argues that the Ninth Circuit's decision in *United States v. Wei Lin*, 841 F.3d 823 (9th Cir. 2016) supports Claim One and his ineffective assistance argument in Claim Three.

In his Motion to Supplement pending 2255 Filing (ECF No. 40), Caldwell also cites *United States v. Jackson*, No. 2:16cr54, 2018 WL 1316933 (D.S.C. Mar. 14, 2018).³ *Lin* held that the proper Base Offense Level for a violation of 18 U.S.C. § 1594(c) is 14, not 34. The *Lin* decision is not controlling, is not applicable to Caldwell's case, and is likely not correct. First, a decision from another circuit may be helpful, but it is not controlling in the Fourth Circuit. Second, the defendant in *Lin* pled guilty to violating 18 U.S.C. §§ 1594(c) and 1591(a), but the plea agreement does not mention § 1591(b)(1). The district court found that it should look at Lin's offense conduct and, since it involved fraud or coercion, the district court applied § 1591(b)(1). It is unclear from the Ninth Circuit's decision whether or not the district court applied the cross reference. But since the cross reference was correctly applied in Caldwell's PSR, the *Lin* decision is not applicable to Caldwell's case. The cross reference, not the initial Base Offense Level for § 1594(c), controlled the calculations of Caldwell's Guidelines. Third, other circuits have rejected the Ninth Circuit's interpretation. *See United States v. Valdez*, 2021 WL 3478402, *6 n.4 (11th Cir. 2021) (noting that the Third Circuit, in *United States v. Sims*, 957 F.3d 362 (3d Cir. 2020), and the Eighth Circuit, in *United States v. Carter*, 960 F.3d 1007 (8th Cir. 2020), disagreed with the Ninth Circuit's analysis in *Lin*); *United States v. Sims*, 957 F. 3d 362, 364 (3d Cir. 2020) (noting that *Lin*'s interpretation could lead to an "inconceivable" scenario and "absurd results").

      The *Jackson* decision, cited by Caldwell in his Motion to Supplement, is also distinguishable and not controlling. According to that decision, the defendants in *Jackson* pled guilty only to § 1594(c). As noted previously, a violation of § 1594(c) is by definition a violation of § 1591, since § 1594(c) charges the conspiracy to violate § 1591. But it appears that

---

³ The Court will grant the Motion to Supplement (ECF No. 40) in order to fully address Caldwell's arguments.

11

the *Jackson* defendants' plea agreements did not include a reference to § 1591(b)(1), so the district court determined under USSG § 2G1.1(a) that the Base Offense Level was 14. There is no mention of the cross reference in the *Jackson* decision. But, as noted previously herein, the cross reference controlled the calculations of Caldwell's Guidelines, so the *Jackson* decision is distinguishable from Caldwell's case.

    For these reasons, the sentencing court did not err in its calculations regarding the Base Offense Level, and Caldwell's counsel's actions were not deficient with regard to her failure to object to those calculations. Since the Court's calculations were correct, there was no resulting prejudice.

    Caldwell also contends that the sentencing court erred in applying the Multiple Count Adjustment and that his counsel was ineffective for failing to object to its application. Again, Caldwell is incorrect. As noted previously herein, USSG § 2G1.1(d) requires that the Multiple Count Adjustment be applied. It states: "If the offense involved more than one victim, Chapter Three, Part D (Multiple Counts) shall be applied as if the promoting of a commercial sex act or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction." USSG § 2G1.1(d)(1). The Multiple Count Adjustment was correctly applied. Application Note 5 to that section further explains:

> For the purposes of Chapter Three, Part D (Multiple Counts), each person transported, persuaded, induced, enticed, or coerced to engage in, or travel to engage in, a commercial sex act or prohibited sexual conduct is to be treated as a separate victim . . . . In addition, subsection (d)(1) directs that if the relevant conduct of an offense of conviction includes the promoting of a commercial sex act or prohibited sexual conduct in respect to more than one victim, whether specifically cited in the count of conviction, each such victim shall be treated as if contained in a separate count of conviction.

U.S.S.G. § 2G1.1 cmt. n.5. *See also United States v. Ford*, 821 F. App'x 742, 749 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2712 (2021) (applying the rule to four victims); *United States v.*

*Flanders*, 752 F.3d 1317, 1340 (11th Cir. 2014) (explaining the grouping rule under § 2G1.1(d)(1)); *United States v. Reiner*, 500 F.3d 10, 17 (applying the rule to multiple victims). The sentencing court did not err in its application of the Multiple Count Adjustment in Caldwell's case, and Caldwell's counsel did not perform deficiently by failing to object to its application. Since the application of the Multiple Count Adjustment was correct, there was no resulting prejudice.

Thus, as to both claims of ineffective assistance within Claim Three, Caldwell has failed to demonstrate that counsel's performance was constitutionally deficient or that he was prejudiced by counsel's actions. Claim Three will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Caldwell's § 2255 Motion (ECF No. 33) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[4]

An appropriate Order shall issue.

/s/ Roderick C. Young
Roderick C. Young
United States District Judge

Norfolk, Virginia
Date: November 30, 2021

---

[4] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Caldwell has not satisfied this standard.